PRESENT: Lemons, Goodwyn, Millette, Mims, and Powell, JJ.,
and Russell and Koontz, S.JJ.

SWORDS CREEK LAND PARTNERSHIP

OPINION BY
v.  Record No. 131590      SENIOR JUSTICE CHARLES S. RUSSELL
September 12, 2014
DOLLIE BELCHER, ET AL.

FROM THE CIRCUIT COURT OF RUSSELL COUNTY
Michael L. Moore, Judge

This appeal requires us to revisit the questions arising
from the interpretation of a severance deed conveying ownership
of, and the right to remove, coal and timber.  The dispute
before us is between the present owners of the surface of the
land and the successors-in-interest to the grantees of the coal
rights.  The parties assert conflicting claims to royalties
generated by the extraction of coal bed methane gas (CBM) from
the coal seams underlying the property.

## Facts and Proceedings

There are no material facts in dispute.  In 1887,
Christopher Richardson and Amanda Richardson, his wife, owned a
891 3/4-acre tract of land in Russell County.  On February 7,
1887, they executed a deed conveying to Joseph I. Doran and W.
A. Dick

    all of the coal, in, upon or underlying a
    certain tract of land and the timber and
    privileges hereinafter specified as
    appurtenant to said tract of land [metes and
    bounds description follows] to enter on,
    over, upon, and through said tract of land
    for the purpose of digging, mining, or

otherwise securing the coal and other things
in and on said tract of land hereinbefore
specified, and removing the same from off
said land . . . .

And, as appurtenant to said tract of land,
and the rights hereinbefore granted, all the
timber except as hereinbefore excepted on
said tract of land that may be necessary to
use to successfully and conveniently mine
said coal and other things above mentioned
and granted; and the right to the said
[grantees and their assigns] to enter on,
over, upon, and through said tract of land
for the purpose of digging, mining, or
otherwise securing the coal and other things
in and on said tract of land hereinbefore
specified, and removing the same from off
said lands; the right to pass through, over,
and upon said tract of land by railway or
otherwise, to reach any other lands
belonging to the said [grantees] for the
purpose of digging for, mining, or otherwise
securing the coal and other things
hereinbefore specified, and removing  same
from off such other land . . . .

This severance deed included a general warranty of title and

covenants of quiet possession and freedom from encumbrances.

The parties to this appeal are Dollie Belcher, Doris E. Dye

and Ruby Lawson, successors-in interest to the grantors named in

the 1887 severance deed (the Surface Owners) and Swords Creek

Land Partnership, successor-in-interest to the grantees named in

the deed (the Coal Owner).

In 1991, the Coal Owner entered into a lease with

Pocahontas Gas Partnership, granting to the lessee "all rights

[the lessor] has" to all the natural gas, including CBM,

2

underlying the Russell County tract described in the 1887 severance deed. The lease was for a term of 10 years and was to continue thereafter as long as gas production or drilling and other exploratory operations should continue. The lessee was to pay the Coal Owner a royalty of 12.5% of the value of the gas produced. The lease granted the lessee the exclusive right to enter, drill, inject liquids into, explore and have access to the coal seams under the land. CNX Gas Company, LLC. (CNX) is the successor-in-interest to the original lessee. Neither CNX nor its predecessor lessees acquired any rights from the Surface Owners.

The Virginia Gas and Oil Act, Code §§ 45.1-361.1 et seq. (the Act), first adopted in 1982, was amended in 1990 to permit CBM production to go forward in cases in which there was conflict or uncertainty as to the ownership of the CBM produced. Code § 45.1-361.22 permits a CBM well operator, such as CNX in the present case, to produce and sell CBM when any claimant petitions the Virginia Gas and Oil Board (the Board), after giving notice to all other claimants, to enter a "pooling order." The claimants' interests are "pooled" by the Board's order and an interest-bearing escrow account for the benefit of all claimants is established. Id. The well operator is required to pay into the escrow account a royalty of 1/8 of the value of all CBM produced. Id. The funds remain in escrow

3

until all claimants have either reached a voluntary settlement of their claims, the interests of the claimants have been finally determined by a court of competent jurisdiction, or a final award of arbitration has taken effect pursuant to Code § 45.1-361.22:1.  Id.

On the petition of CNX, the Board entered such a pooling order on June 16, 1992, followed by several supplemental orders. Since that date CNX has been producing CBM from the coal seams underlying the land and paying the required royalties into the Board's escrow account.  At the time of the circuit court's hearing, CNX was operating six gas wells on the property.

On April 25, 2011, the Surface Owners filed this action in the circuit court against the Coal Owner, seeking a declaratory judgment.  The Surface Owners contended that they were the sole owners of the CBM produced from their land and entitled to all the royalties therefrom, including those held in escrow by the Board and those yet to accrue.  CNX was not made a party.

Because the parties agreed that no material facts were in dispute, the court heard the case on the Surface Owners' motion for summary judgment.  On September 17, 2013, the court, by a letter opinion, held that the 1887 severance deed was unambiguous, that it conveyed to the Coal Owner only coal, timber and access rights pertaining to those two commodities and that CBM is a "distinct mineral estate" that was not conveyed by

4

the severance deed.  The court entered an order declaratory of the Surface Owners' ownership of the CBM and right to receive the royalties therefrom.  We awarded the Coal Owner an appeal.

## Analysis

The dispositive question in this appeal is whether the granting clause in the 1887 severance deed embraced CBM as well as coal.  A decade ago, we considered a case involving the same legal question and very similar facts.  Harrison-Wyatt, LLC v. Ratliff, 267 Va. 549, 593 S.E.2d 234 (2004), was a dispute between surface owners and a coal owner over escrowed funds held by the Board as royalties accruing from the production of CBM.  The decision depended upon the interpretation of a 19th century severance deed that conveyed to the coal owner's predecessor "all the coal in, upon, and underlying" the land.  Id. at 551, 593 S.E.2d at 235.  After considering the scientific evidence in the record, the decisions of the highest courts of sister states and the Supreme Court of the United States, Justice Stephenson wrote, for a unanimous Court:

> We do not believe the term "coal," as it was used in the late 19th century, is ambiguous. As commonly understood at the time, the term "coal" meant a solid rock substance used as fuel, and nothing in the record indicates that CBM is a part of coal itself.  On the other hand, although CBM has a weak physical attraction to coal and escapes from coal when coal is mined, it is a gas that exists freely in the coal seam and is a distinct mineral estate.  Moreover, the parties could

5

not have contemplated at the time the
severance deeds were executed that CBM would
become a very valuable energy source.  We
hold, therefore, that title to the CBM did
not pass to the Coal Owner. . . .[1]

Id. at 556, 593 S.E.2d at 238 (citations omitted).

We adhere to that holding.  The Coal Owner argues, however,

that Harrison-Wyatt is inapposite because that case involved the

production of CBM from "gob wells" where the gas had "migrated"

away from the coal and had collected elsewhere in the mine,

while the CBM in the present case remains within the coal seam

until the seam is fractured or otherwise disturbed.  Because of

our view that CBM is not a constituent part of coal at any time

but rather is a separate mineral estate, we do not agree with

the Coal Owner.

We therefore turn to the four corners of the severance deed

to ascertain whether its granting clause can be construed to

convey any mineral estate beyond coal.  The Coal Owner contends

that it is ambiguous, requiring resort to traditional rules of

construction. (Wh. Br. 15-20)  In CNX Gas Company, LLC v.

Rasnake, 287 Va. 163, 166-67, 752 S.E.2d 865, 867 (2014), we

stated the following:  "Where the language of a deed clearly and

---

[1]In 2010, the General Assembly added Code § 45.1-361.21:1 to the
Act, which provides in part:  "A conveyance, reservation, or
exception of coal shall not be deemed to include coalbed methane
gas." See 2010 Acts chs. 730, 762.

6

unambiguously expresses the intention of the parties, no rules of construction should be used to defeat that intention. Where, however, the language is obscure and doubtful, it is frequently helpful to consider the surrounding circumstances and probable motives of the parties." In that case, decided earlier this year, we found the granting clause under consideration to be ambiguous, capable of reasonable interpretation in at least three different ways. It required us to go outside the four corners of the deed in order to ascertain the intent of the parties. Id. at 167-69, 752 S.E.2d at 867-68. Examination of the granting clause in the present case brings us to the opposite conclusion and, accordingly, to the opposite result.

We agree with the circuit court's conclusion that the granting clause is an unambiguous grant of coal, timber and access rights to those two commodities. While not concise, its frequent references to "other things" and "rights and privileges" are invariably limited by such qualifying phrases as "hereinafter specified," "hereinbefore specified," "hereinbefore granted," and "above mentioned." Each of these qualifying phrases refers the reader back to coal, timber, and access rights pertaining to those commodities. In light of the 19th century understanding of the meaning of the word "coal," there is no ambiguity as to the intentions of the parties to the severance deed.

7

The Coal Owner finally contends that it has conferred a benefit upon the Surface Owners by causing CBM to be produced from their property, resulting in unjust enrichment to the Surface Owners. The Coal Owner argues that the circuit court erred in refusing to impose a constructive trust on the royalties in its favor. We agree with the circuit court's ruling that this contention lacks merit.

We hold that the CBM was at all times the property of the Surface Owners, and the Coal Owner conferred no benefit upon the Surface Owners. The Coal Owner further argues that it had the "exclusive right of access" to the coal seam under the severance deed and that the Surface Owners could never have obtained CBM from it without the Coal Owner's consent. That argument overlooks the fact that the Coal Owner's right of access to the coal seam is limited by the severance deed to access for the sole purposes expressed in the deed, namely, the mining, extraction and removal of coal, together with limited quantities of timber.

In Harrison-Wyatt, we declined to consider the issue whether the surface owner has the right to fracture a coal seam, because the issue had not been raised by the parties at trial or on appeal. 267 Va. at 557 n.3, 593 S.E.2d at 238 n.3. That issue is not before us in the present case because here the Coal Owner, by entering into its lease with CNX, permitted the

8

fracturing of the coal seam without any participation by the Surface Owners.[2]  We find no evidence in the record from which it may be inferred that the Surface Owners could reasonably be expected to repay the Coal Owner for the inevitable release of CBM as a result of the fracturing of the coal seam by the Coal Owner's lessee.  Therefore, the Coal Owner has no equitable claim against the Surface Owners for unjust enrichment.

## Conclusion

We conclude that the Surface Owners have at all times owned all mineral estates within their lands except coal, and are entitled to all royalties accrued from the production of CBM therefrom and those yet to accrue.  For the reasons stated, we will affirm the judgment.

<u>Affirmed</u>.

---

[2] CNX is not a party to this case and our holding has no effect upon the mutual rights and obligations arising under its lease.